UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| YAQIN ABDALLAH AMADU UMOJA a/k/a MICHAEL WILLIAMS, ) ) ) Plaintiff, ) ) ) VS. ) ) ) CORRECTIONS CORPORATION OF AMERICA, ET AL., ) ) ) Defendants. ) ) | No. 16-1248-JDT-cgc |

ORDER PARTIALLY DISMISSING COMPLAINT AND DIRECTING
THAT PROCESS BE ISSUED AND SERVED ON THE REMAINING DEFENDANTS

On September 14, 2016, Plaintiff Yaqin Abdallah Amadu Umoja a/k/a Michael Williams, Tennessee Department of Correction prisoner number 230655, an inmate currently housed at the Trousdale Turner Correctional Center in Hartsville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The complaint concerns Umoja's previous incarceration at the Hardeman County Correctional Facility (HCCF) in Whiteville, Tennessee. On September 15, 2016, the Court issued an order granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) The Clerk shall record the Defendants as Corrections Corporation of America (CCA, now

known as CoreCivic);[1] HCCF Warden Grady Perry; Associate Warden Charlotte Burns; Associate Warden First Name Unknown (FNU) Aker; Chief of Security FNU Ponds; Health Administrator FNU Andrews; Health Administrator FNU Borden; Nurse T. Brown; Operations Warden John Rychen; Nurse FNU Shearon; and Dr. FNU Dietz.

In his complaint, Umoja alleges that on unspecified occasions between June 28, 2016, and July 3, 2016, he was seen by Defendant Dietz for a complaint of severe pain in his shoulder and also to ask about renewals of the prescription medications used to treat Umoja's chronic medical conditions: high blood pressure, acid reflux (gastroesophageal reflux disease) and osteoarthritis. (ECF No. 1 at 3.) On July 8, 2016, Umoja alleges that he ran out of all his prescriptions for those chronic conditions. (*Id.*) When he questioned the medical staff, Umoja was told that his medications for high blood pressure and acid reflux had been ordered, but not the meloxicam, for arthritis pain. (*Id.*) He was also told by the medical staff that the meloxicam had not been ordered because Defendant Dietz had discontinued it. (*Id.* at 6.) Umoja allegedly attempted to talk to Defendant Dietz and submitted medical request forms, with "no positive results." (*Id.*) He alleges that he filed a grievance about the issue on July 9, 2016. (*Id.*)

Umoja further alleges that after a few days had passed the swelling and pain in his joints intensified. (*Id.*) He was seen by Nurse Hall on July 12, 2016, who reviewed his file and referred him to Defendant Dietz; however, Umoja did not actually see Dietz. (*Id.*) Some time between July 12, 2016 and July 15, 2016, Umoja's wife allegedly sent a fax to

---

[1] *See* www.corecivic.com.

Defendant Andrews about Umoja's lack of medication, but Andrews did not respond. (*Id.*) On July 19, 2016, Umoja's wife allegedly received a telephone call from Defendant Borden, who told her that he had taken charge of medical services and assured her that Defendant Dietz would order Umoja's arthritis medicine. (*Id.*) Umoja alleges that his wife further advised Defendant Borden that even though Umoja had been told by the medical staff that his medications for high blood pressure and acid reflux already had been ordered, he still was not receiving them. (*Id.*) Two days after Borden's telephone call, Umoja had received no medications. (*Id.* at 6-7.) Despite calls from Sergeants Thomas and Robertson to Defendant Borden, who allegedly stated he under the impression Defendant Dietz had taken care of the problem, it was not until July 28, 2016, after his wife personally visited the HCCF, that Umoja actually received any of his medications. (*Id.* at 7.) Umoja contends that as a result of not receiving his medicine for a significant length of time, he suffered from high blood pressure, head aches and dizziness, as well as severe joint pain. (*Id.*) Umoja alleges that Defendant Dietz stopped his medications without talking to him further or doing any additional physical examination. (*Id.*)

Umoja alleges that throughout this episode, letters and faxes about the issue were sent to the HCCF Administrative Staff, specifically to Warden Perry, Associate Warden Burns, Associate Warden Akers, Chief of Security Ponds and Operations Warden Rychen; however, none of these Defendants made any response. (*Id.*)

In his second claim, Umoja alleges that on August 1, 2016, he was bitten in the upper chest and shoulder by a spider while he was sleeping, and as a result he submitted a sick call request to be seen in the medical department. (*Id.* at 8.) The next day he received

a response written by Defendant Nurse Brown stating that his name was not on the current roster of inmates. (*Id.*) Umoja alleges he resubmitted a medical request because the bites were swelling and opening up, and his wife sent faxes to Defendants Borden and Perry about the issue. (*Id.*) On August 3, 2016, Umoja was called to the medical department. (*Id.*) While his vitals were being taken by Nurse Hall, Defendant Shearon allegedly approached and again stated that his name was not on the roster. (*Id.*) Umoja retorted, "I find that odd when I have an I.D. and I am housed in this prison." (*Id.*) He alleges Shearon became angry and pointed her finger in his face, told him to shut his mouth, and refused to treat him even though the bites were now "open and oozing." (*Id.* at 8-9.) Umoja filed an incident report with Defendant Borden, who allegedly investigated, although the outcome is not specified. (*Id.*) However, Umoja still received no medical treatment.

On or about August 6, 2016, Umoja took photos of the spider bites and mailed them to his wife; he then filed a grievance in an attempt to get treatment. (*Id.* at 9.) He alleges that by August 7, 2016, his neck was swollen and stiff. (*Id.*) He alleges that he again wrote to the Executive Staff, and his wife sent additional faxes. (*Id.*) However, nothing was done, and he began trying to treat the bites himself.[2] (*Id.*) Finally, on August 18, 2016, he was called to the medical department after his wife faxed Defendant Borden. (*Id.*) Umoja alleges that he was examined by Nurse McCarthy, who confirmed his wounds were the result of spider bites; she cleaned the bites, wrapped them, and gave him antibiotic ointment to put on them. (*Id.*) However, he alleges that by the time he received treatment

---

[2] Plaintiff does not specify the ways in which he attempted to treat himself.

he "had a hole in his shoulder and chest area from the poison of the bites" and that he continues to have pain on his right side when he rotates his neck and head. (*Id.*)

Umoja alleges that the Defendants' denial of medical care for his conditions amounted to "unfair and inhumane treatment" and seeks both compensatory damages and injunctive relief. (*Id.* at 3.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

>  (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
>  (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires

a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court

6

cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Umoja filed his complaint on the court-supplied form for actions under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

7

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The complaint does not assert a valid claim against CCA/CoreCivic. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)); *see also Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012) (corporation that provides medical care to prisoners can be sued under § 1983). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners. *Thomas*, 55 F. App'x at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001). CCA/CoreCivic "cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). Instead, to prevail on a § 1983 claim against CCA/CoreCivic, Plaintiff "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Id.* The complaint does not allege that Umoja suffered any injury because of an unconstitutional policy or custom of CCA/CoreCivic.

Umoja's claims for lack of adequate medical treatment arise under the Eighth Amendment, which prohibits cruel and unusual punishments. An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S.

825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Curtin*, 631 F.3d at 383; *Mingus v. Butler,* 591 F.3d 474, 479-80 (6th Cir. 2010).  The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298.  In the context of an Eighth Amendment claim based on a lack of medical care, the objective component requires that a prisoner have a serious medical need.  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).  "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention."  *Blackmore*, 390 F.3d at 897 (internal quotation marks omitted); *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).  The wounds resulting from the spider bites, as well as Umoja's high blood pressure, acid reflux, and osteoarthritis constitute objectively serious medical needs.

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302-03.  The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm.  *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995).  "[D]eliberate indifference describes a state of mind more

9

blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and also disregards that risk. *Id.* at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not state a claim for deliberate indifference. *Id.* at 838.

The Court finds that Plaintiff's allegations against Defendants Dr. Dietz and Nurse Shearon plausibly allege Eighth Amendment claims for denial of adequate medical care. However, the only allegation against Defendant Nurse Brown is that she signed a response to Umoja's first sick call request for treatment of his spider bite by stating his name was not listed on the current roster. Notwithstanding that response, Umoja resubmitted his sick call request and was called to the medical department the next day, which is when the confrontation with Defendant Shearon occurred and he allegedly was denied treatment. Umoja does not allege Defendant Brown was involved in that encounter, ever examined Umoja's spider bites, or refused to treat him after becoming aware that the condition was serious. Thus, the allegations against Defendant Brown are insufficient to state an Eighth Amendment claim for denial of medical care.

Defendants Perry, Burns, Akers, Ponds, Rychen and Andrews are sued only because of their supervisory positions. Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official

defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official, who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006). Furthermore, a failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). Umoja has not alleged that Defendants Perry, Burns, Akers, Ponds, Rychen or Andrews were personally involved in a way that would support §1983 supervisory liability.

With regard to Defendant Borden, the complaint alleges more than a mere failure to respond to Umoja's complaints and grievances. Borden allegedly telephoned Umoja's wife on July 19, 2016, and assured her the problems with Umoja receiving his prescription

medications would be resolved. However, Borden allegedly did not follow up,[3] and the problem was not resolved until more than a week later when Umoja's wife personally came to the prison.

When Umoja was attempting to obtain treatment for his spider bites, he alleges that his wife sent a fax to Borden about the problem on August 2, 2016, although he does not allege that Borden responded to that particular communication. However, Umoja also alleges that after the confrontation with Defendant Shearon on August 3, 2016, he filed an incident report and turned it over to Borden, who investigated. Umoja further alleges that he finally received treatment on August 18, 2016, because his wife again faxed Borden.

These allegations of personal involvement, while not extensive, are sufficient to state a plausible claim of supervisory liability against Defendant Borden on Umoja's Eighth Amendment claims for denial of adequate medical care.

In conclusion, Umoja's claims against CCA/CoreCivic, Perry, Burns, Akers, Ponds, Andrews, Brown and Rychen are DISMISSED for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Process will be issued for Defendants Dietz, Shearon and Borden.

It is ORDERED that the Clerk shall issue process for Defendants Dietz, Shearon and Borden and deliver that process to the U.S. Marshal for service. Service shall be made on Defendants Dietz, Shearon and Borden pursuant to Federal Rule of Civil Procedure 4(e)

---

[3] As stated, the complaint alleges that Umoja did not receive his medications even after Borden's telephone call to Umoja's wife, and Borden told Sergeants Thomas and Robertson when they inquired about it that he was "under the impression" Defendant Dietz had taken care of the matter. (ECF No. 1 at 6-7.)

and Tennessee Rules of Civil Procedure 4.04(1) and (10), either by mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further ORDERED that Umoja shall serve a copy of every subsequent document he files in this cause on the attorneys for Defendants Dietz, Shearon and Borden or on any unrepresented Defendant. Umoja shall make a certificate of service on every document filed. Umoja also shall familiarize himself with Federal Rules of Civil Procedure and this Court's Local Rules.[4]

Umoja is reminded that he must promptly notify the Clerk, in writing, of any change of address or extended absence. Failure to comply with this requirement or any other order of the Court may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

                                      s/ **James D. Todd**
                                      JAMES D. TODD
                                      UNITED STATES DISTRICT JUDGE

---

[4] A copy of the Local Rules may be obtained from the Clerk. The Local Rules are also available on the Court's website at www.tnwd.courts.gov/pdf/content/LocalRules.pdf.